# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VENKATA SATYA VISHNU VARDHAN PARCHA, SUNEETH PARCHA, K.P., and D.D.P. | § § § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-015-SDJ |
| | § | |
| KENNETH T. (KEN) CUCCINELLI, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZEN AND IMMIGRATION SERVICES | § § § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs Venkata Satya Vishnu Vardhan Parcha, Suneeth Parcha, K.P., and D.D.P.'s Emergency Motion for a Temporary Restraining Order or Preliminary Injunction. (Dkt. #4). The Court, having considered the Motion, the government's response, the supplemental briefing, the applicable law, and the record, **DENIES** the Motion.

### BACKGROUND

Venkata Parcha and his family are citizens of India, where Parcha[1] was employed as a senior software engineer for AppLabs Technologies Pvt. Ltd., a computer software testing company. In 2011, AppLabs submitted a petition to the United States Citizenship and Immigration Services ("USCIS") for an "L–1B" nonimmigrant visa to transfer Parcha and his family to one of its American offices. *See* 8 U.S.C. § 1101(a)(15)(L) (allowing intra-company transfer of employees with specialized knowledge from foreign offices to the United States on a temporary basis). The USCIS approved the petition shortly thereafter, allowing Parcha to receive his visa and move to the United States with his family.

---

[1] "Parcha" will refer to Venkata Parcha for purposes of clarity.

In 2012, while working for AppLabs, Parcha received an offer of employment from Unified Systems, Inc. ("Unified Systems"), an information technology staffing company. On May 8, 2012, Unified Systems submitted a petition to USCIS for an "H–1B" nonimmigrant visa to allow Parcha to work for the company. *See id.* § 1101(a)(15)(H)(i)(b) (allowing nonimmigrant-alien specialty occupation workers to temporarily work in the United States). However, while that H–1B visa petition was pending, AppLabs petitioned for and received an extension of Parcha's L–1B visa. In November 2012, Unified Systems again petitioned for, and this time received, an H–1B visa on Parcha's behalf. With that, Parcha finally accepted Unified System's offer and began working for the company.

Parcha later received another offer of employment, this time from an international bank. On November 12, 2015, the bank petitioned for and later received an H–1B visa, allowing Parcha to begin his work for the bank. In 2016, the bank also submitted to the USCIS a petition for an immigrant visa through form I–140, "Immigrant Petition for Alien Workers," which is a part of the application process to obtain an immigrant visa that allows the beneficiary to work in the United States on a permanent, rather than temporary, basis. The USCIS approved the bank's form.[2]

Though Parcha no longer worked for Unified Systems, his time at the company became an issue. In April 2016, the company's owners were indicted for several federal crimes, including visa fraud and conspiracy to commit visa fraud, in violation of 18 U.S.C. §§ 371 and 1546(a), perpetuated by using nearly a dozen shell companies to file hundreds of fraudulent H–1B petitions and other related documentation. (Dkt. #1-1). One of the owners, Raju Kosuri, pleaded guilty to visa fraud and conspiracy to commit visa fraud and provided sworn statements as to the scope of the visa-fraud scheme. (Dkt. #1-2). In his sworn statement, Kosuri admitted that:

---

[2] This, alone, did not convert Parcha into an immigrant visa holder entitled to permanent residence; he remained a nonimmigrant H–1B visa holder.

> As the former owner of EcomNets, Inc., I [Kosuri] along with other co-conspirators filed fraudulent and fictitious H–1B CAP petitions with USCIS . . . on behalf of shell companies created for this purpose. The shell companies involved in filing fraudulent H–1B CAP petitions included . . . Unified Systems, Inc. . . . The H–1B CAP petitions, LCAs, and supporting documentation further indicated there was employment available and the beneficiaries of those petitions would work at the following physical addresses: 1 EcomNets Way, Danville, VA . . . In fact, there was no work available at these addresses, and all of the H–1B CAP petitions filed by the above referenced organizations between 2010 and 2016 were fraudulent.

(Dkt. #5-3). The indictments prompted the USCIS to review Parcha's 2012 H–1B visa petition filed by Unified Systems on his behalf.

After conducting a review of Parcha's H–1B visa petition, the USCIS determined that the petition misrepresented material facts and, on August 28, 2018, issued a Notice of Intent to Revoke ("NOIR") the visa on that basis. *See* 8 C.F.R. § 214.2(h)(11)(iii)(A). After the 33-day response window closed without any response from Parcha, the USCIS revoked Parcha's H–1B visa based on the misrepresentations.

On November 28, 2018, Parcha and several other former employees of Kosuri companies filed a lawsuit against the acting director of the USCIS in the District of South Carolina.[3] The plaintiffs alleged, among other things, that the USCIS did not provide adequate notice of the revocations at issue because the NOIRs were mailed to the defunct Kosuri companies rather than the visa holders. In response, the USCIS agreed to reopen the revocations, reissue the NOIRs to the visa holders themselves, (Dkt. #5-4), and enter an injunction prohibiting it from taking any adverse legal action on the basis of the revocations at issue, including denial of pending visa petitions throughout the duration of the lawsuit, (Dkt. #5-7). Parcha responded to the NOIR through counsel with written argument and supporting documentation. (Dkt. #1-5). But on December 18, 2019, the USCIS again revoked Parcha's H–1B visa on the basis of

---

[3] *Sakthivel v. Cuccinelli*, Civil Case No. 3:18-CV-03194 (D.S.C. Nov. 28, 2018).

misrepresentation of material facts. (Dkt. #5-5). On December 20, 2019, Parcha lost his work authorization and his job. Parcha and his wife remain unemployed.

On January 7, 2020, Parcha, along with his wife and two children as dependents, filed the instant action. (Dkt. #1). The Plaintiffs bring two claims under the Administrative Procedure Act ("APA"), for arbitrary-and-capricious revocation of Parcha's H–1B visa and for unreasonable delay in adjudicating his Parcha's H–1B visa petition. On January 10, 2020, the Plaintiffs filed an emergency motion for a temporary restraining order or preliminary injunction, requesting that the Court delay the legal effect of the USCIS's revocation of Parcha's H–1B visa and compel the USCIS to adjudicate his pending H–1B visa petition. (Dkt. #4). The government responded in opposition. (Dkt. #5). After a hearing on the motion, the Court ordered the parties to provide supplemental briefing on issues regarding the Plaintiffs' ability to bring the claims. (Dkt. #12, #13).

JURISDICTION

Federal courts must resolve the "first and fundamental question" of jurisdiction before wielding the judicial power of the United States. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900)). The Plaintiffs have Article III standing to bring their unreasonable-delay and arbitrary-and-capricious revocation claims. Likewise, the Court has subject-matter jurisdiction over the Plaintiffs' APA claims under federal-question jurisdiction and is not stripped of that jurisdiction by 8 U.S.C. § 1252(a)(2)(B)(ii). *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (citing *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed. 2d 192 (1977)).

## I.    Constitutional Standing

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

It is beyond dispute that, should the Court find an injury in fact, the injury is fairly traceable to the USCIS, as the agency authorized to adjudicate H–1B visa petitions and revoke H–1B visas, and is redressable by a favorable ruling from the Court, as authorized by the APA. *See* 5 U.S.C. § 706(1) (authorizing a court to "compel agency action unlawfully withheld or unreasonably delayed"); *id.* § 706(2)(A) (authorizing a court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). The crux of the inquiry, then, is whether the Plaintiffs can claim an injury in fact.

Parcha has asserted an injury in fact sufficient to establish Article III standing as to each of the claims. Parcha has suffered concrete, particularized economic harm arising from the revocation of his H–1B visa and the nonadjudication of his pending H–1B visa petition. Specifically, he has suffered lost wages because he was terminated upon revocation of his H–1B visa, and he continues to suffer lost wages and related economic hardship because he cannot regain employment or make related financial decisions due to nonadjudication of his H–1B visa petition. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 418, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (grounding Article

III standing in a "sufficient likelihood of economic injury"); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("[I]t is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."). Similarly, Parcha's wife and two children also assert facts sufficient to establish Article III standing because, as dependents whose visa status and financial status are tethered to Parcha's, the USCIS's revocation and nonadjudication have likewise inflicted economic and other related harms on them in a manner fairly traceable to the USCIS and redressable by a favorable Court order.[4]

The government opposes standing but does so indirectly. Rather than dispute these injuries, the government attempts to categorically deprive Parcha, and his family by extension, of any claim to a legally protected interest in the visa petitions at issue. The government asserts that the beneficiary of a visa petition, by virtue of that status, cannot lay claim to any legally protected interest regarding an H–1B visa petition filed on his or her behalf. Only the petitioner, the government contends, may claim such an interest. The government primarily relies upon a regulation, 8 C.F.R. § 103.3(a)(1), that defines the scope of "affected parties" capable of pursuing administrative appeal of "[c]ertain unfavorable decisions on applications, petitions, and other types of cases." *Id.* § 103.3(a)(1)(ii). The regulation defines "affected parties" as "the person or entity with legal standing in a proceeding" and specifies that it "does not include the beneficiary of a visa

---

[4] Courts have recognized other legally protected interests grounding standing under similar circumstances. Some have identified loss of status as such an injury. *See Stellar IT Sols., Inc. v. USCIS*, No. CV 18-2015 (RC), 2018 WL 6047413, *5 (D.D.C. Nov. 19, 2018) (finding that though the plaintiff "was merely the beneficiary of the H-1B petition," he had "standing to bring a judicial challenge to USCIS's denial of the petition" because he "suffered an injury in fact—the loss of his legal nonimmigrant status—that [was] traceable to USCIS's denial of the petition and redressable by a favorable ruling in this Court") (citing *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015)). Others have recognized deprivation of the right to pursue permanent residence as such an injury. *See Kurapati v. USCIS*, 775 F.3d 1255, 1259–60 (11th Cir. 2014) (regarding denial of an I–140 petition); *Tenrec, Inc. v. USCIS*, No. 3:16-CV-995-SI, 2016 WL 5346095, *6 (D. Or. Sept. 22, 2016) (regarding denial of an H–1B visa petition, based in part on its unique "dual intent" nature). Specific to their unreasonable-delay claim, the Plaintiffs may also call upon the assurance of agency adjudication in a "reasonable time," *see* 5 U.S.C. § 555(b), and the suggestion that such time is 30 days for adjudication of a nonimmigrant visa petition, *see* 8 U.S.C. § 1571(b). These legally protected interests also arise in this case. In light of the economic harm suffered by the Plaintiffs, however, they are not necessary to establish standing.

petition." *Id.* § 103.3(a)(1)(iii)(B). Because Parcha is a beneficiary and therefore incapable of bringing an administrative appeal, the government contends that Parcha is also unable to claim any legally protected interest in the H–1B visa petitions at issue.

Put another way, the government argues that the regulation deprives Parcha of any claim to a legally protected interest in the visa petitions at issue, thereby depriving him of the injury in fact necessary to establish constitutional standing. The Court disagrees. The regulation deprives a visa-petition beneficiary of the right to bring an administrative appeal—and no more. Even if the regulation denied Parcha the ability to pursue his claims in federal court, it would do so by denying him the ability to state a claim. That is to say, the interests Parcha seeks to vindicate would fall outside of the zone-of-interests contemplated by the governing laws because the regulation would exclude his interests, and therefore Parcha would not be able to assert a legislatively conferred cause of action. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 1382, 188 L.Ed.2d 392 (2014) (holding that the zone-of-interests test, formerly considered a matter of "prudential standing," is "not derived from Article III" but is instead "a matter of statutory interpretation"); *see also id.* (stating that the zone-of-interests test determines "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim"); *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 289 (5th Cir. 2018) (unpublished) (same).

Supreme Court precedent is clear that a plaintiff's possible inability to bring a claim does not deny him or her constitutional standing. *See Steel Co.*, 523 U.S. at 89, 118 S.Ct. 1003 ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.") (internal quotation marks and citations omitted). Quite the opposite, a court has jurisdiction where one interpretation of the governing laws provides a cause of action and another does not:

> [T]he district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Id.* (internal quotation marks and citations omitted). This rubric applies here. Courts are divided on the impact of the regulation, sometimes allowing federal claims to proceed in spite of it and sometimes denying federal claims because of it. *Compare Kurapati v. USCIS*, 775 F.3d 1255, 1260 (11th Cir. 2014) (per curiam) ("[T]he regulatory definition of 'affected party' does not preclude the [visa petition] beneficiary from having standing in the district court, as it relates to who has the ability to challenge the administrative denial of a petition. It is therefore not a binding statement of constitutional standing."), *with Pai v. USCIS*, 810 F. Supp. 2d 102, 111–12 (D.D.C. 2011) (stating that plaintiff–beneficiary's lack of standing "is in accord with numerous other courts that agree (albeit for a variety of reasons) that the petitioner—and not the beneficiary—of a visa application is the proper party with standing to challenge the agency's action"). This disagreement is also proof that Parcha's claims are not "wholly insubstantial and frivolous." *See Steel Co.*, 523 U.S. at 89, 118 S.Ct. 1003. Thus, the regulation is irrelevant to the determination of Parcha's constitutional standing and should instead be considered at the zone-of-interests phase of the Court's analysis. *See id.* at 523 U.S. at 97, 118 S.Ct. 1003. ("[T]he Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon").

Parcha and his family members have asserted concrete, particularized injuries in fact that are fairly traceable to the USCIS and redressable by a favorable determination from the Court. Thus, the Plaintiffs have constitutional standing, and the Court has jurisdiction to hear their claims.

## II. Jurisdiction Stripping under 8 U.S.C. § 1252(a)(2)(B)(ii)

Notwithstanding the Plaintiffs' constitutional standing to assert the claims made in this case, the Court must also consider at the threshold whether it is stripped of subject-matter jurisdiction by 8 U.S.C. § 1252(a)(2)(B)(ii). Section 702 of the APA entitles "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to judicial relief. *Id.* § 702. However, section 701 limits the scope of judicial review when "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* §§ 701(a)(1), (2). On such limitation is provided in 8 U.S.C. § 1252(a)(2)(B)(ii):

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . .
>
>> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

This subsection "applies not only to the USCIS's grant or denial of an application for adjustment of status, but also to 'any other decision *or action*' within the USCIS's discretion." *Bian v. Clinton*, 605 F.3d 249, 253 (5th Cir. 2010), *vacated as moot due to intervening agency adjudication*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis in original)). The discretion sufficient to deny judicial review under this subsection must be found in a statute within the subchapter, referring to 8 U.S.C. §§ 1151–381, not a regulation. *Kucana v. Holder*, 558 U.S. 233, 237, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010); *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005).

The relevant statute here, 8 U.S.C. § 1184, governs admission of nonimmigrant aliens. Section 1184 requires that admission "shall be for such time and under such conditions as the Attorney General may by regulations prescribe." *Id.* § 1184(a)(1). For example, the Attorney

General may "when he deems necessary" give "a bond with sufficient surety in such sum and containing such conditions as the Attorney General shall prescribe." *Id.* The section also requires that the Attorney General "shall" adjudicate petitions for importing an alien as a nonimmigrant, including those filed by an employer for an H–1B visa, and "shall prescribe" the form and content of such petitions. *Id.* § 1184(c)(1).

The mandatory language in section 1184 counsels that federal courts are not denied jurisdiction over challenges to the pace of adjudication of H–1B visa petitions or the revocation of H–1B visas. It is well-settled that the "[u]se of the word 'shall' connotes a mandatory intent." *Matter of DP Partners Ltd. P'ship*, 106 F.3d 667, 670–71 (5th Cir. 1997). The operative sentence in section 1184(a)(1) suggests a mandatory intent by twice commanding that the USCIS "shall" perform the functions related to admission of nonimmigrants, including adjudicating nonimmigrant visa petitions and revoking nonimmigrant visas. *See Morris v. Gonzales*, Civ. Action No. 06-4383, 2007 WL 2740438, at *3 (E.D. Pa. Sept. 19, 2007) ("The statute conferring USCIS with the authority to revoke [the plaintiff–beneficiary's] H1B petition is 8 U.S.C. § 1184[.]") (citing 8 U.S.C. § 1184(a)(1)).

The language not included in section 1184 is equally compelling. Nowhere does the statutory text explicitly provide the USCIS "discretion" in the pace of adjudicating visa petitions or the revocation of visas. This is a significant omission, as other portions of section 1184 explicitly authorize the agency to act "in its discretion" or even in its "sole discretion." *See* 8 U.S.C. § 1184(c)(6)(F) ("The Attorney General shall give such weight to advisory opinions provided under this section as the Attorney General determines, in his sole discretion, to be appropriate."); *id.* § 1184(d)(1) ("[T]he Secretary of Homeland Security in his discretion may waive the requirement that the parties have previously met in person."); *id.* § 1184(d)(2)(B) ("The Secretary

of Homeland Security may, in the Secretary's discretion, waive the limitations in subparagraph (A) if justification exists for such a waiver."); *id.* § 1184(d)(2)(C)(iii) ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Secretary."); *id.* § 1184(q)(3) ("The status of an alien physically present in the United States may be adjusted by the Attorney General, in the discretion of the Attorney General and under such regulations as the Attorney General may prescribe, to that of a nonimmigrant under section 1101(a)(15)(V) of this title . . ."). As the Third Circuit has explained, "Congress knows how to 'specify' discretion and has done so repeatedly in other provisions of the INA," including "no less than thirty-two additional provisions in the very subchapter of the INA referenced by 8 U.S.C. § 1252(a)(2)(B)(ii) that make explicit the grant of 'discretion' to the Attorney General or the Secretary of Homeland Security." *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 97 (3d Cir. 2006), *overruled on other grounds*, 934 F.3d 255 (3d Cir. 2019).

At least one court has determined that section 1252(a)(2)(B)(ii), as applied to section 1184, does not deprive courts of jurisdiction to review denial of an H–1B petition. *See Morris*, 2007 WL 2740438, at *3–4. Similarly, courts have determined that judicial review generally extends to instances "[w]hen an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect." *Alsharqawi v. Gonzales*, No. 3:06 CV 1165 N, 2007 WL 1346667, at *2 (N.D. Tex. Mar. 14, 2007) (quoting *In re Am. Fed. of Gov't Emps., AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986)).

There are, however, competing arguments. First, section 1184 implies USCIS discretion concerning the adjudication of nonimmigrant visa petitions and revocation of nonimmigrant visas because it allows the USCIS to promulgate implementing regulations that determine how it will make such decisions. The statutory text states that adjudication of admission is "under such

conditions as the Attorney General may be regulations prescribe" and includes as an example a condition available "when he deems necessary." 8 U.S.C. § 1184(a)(1). For instance, the statutory text does not include, much less mandate, adjudication or revocation deadlines, despite including such deadlines elsewhere. *See, e.g.*, *id.* ("The admission . . . shall be for such time . . ."); *id.* § 1184(a)(2)(A) ("The period of authorized status . . . shall be for such period . . ."). Courts have found the omission of mandatory adjudication deadlines significant in the section 1252(a)(2)(B)(ii) analysis as applied to similar USCIS determinations. *See, e.g.*, *Beshir v. Holder*, 10 F. Supp. 3d 165, 176 (D.D.C. 2014) ("The absence of a congressionally-imposed deadline or timeframe to complete the adjudication of adjustment applications [pursuant to Form I-485] also supports the conclusion that the pace of adjudication is discretionary and thus not reviewable.").

Given the tension between competing interpretations of section 1184, the Court resolves this issue through the application of a "familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana*, 558 U.S. at 251, 130 S.Ct. 827. In *Kucana*, the Supreme Court encouraged this course in applying section 1252(a)(2)(B)(ii) to a related immigration adjudication. Indeed, the *Kucana* Court "dispelled" "[a]ny lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii)" by referring to the "well-settled" jurisprudence counselling that "[w]hen a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Id.* (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995)). The Supreme Court noted that it has "consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." *Id.* (collecting cases). The Fifth Circuit has similarly spoken on the breadth of judicial

review under the APA, calling upon Supreme Court precedent stating that the Act "embodies the basic presumption of judicial review" and that such review "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Collins v. Mnuchin*, 938 F.3d 553, 573–74 (5th Cir. 2019) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

Here, there can be no doubt that section 1184 is reasonably susceptible to divergent interpretation. The issue, then, is whether there is "'clear and convincing evidence' to dislodge the presumption" of judicial review. *Kucana*, 558 U.S. at 252, 130 S.Ct. 827. There is not. The discretion-by-omission-and-implication argument carries some weight but does not rise to the level of "clear and convincing" evidence, especially when compared to clear grants of discretion provided elsewhere in the immigrant statutes, including other subsections of section 1184 itself. Therefore, the USCIS does not have sufficient discretion to foreclose judicial review of the Plaintiffs' unreasonable-delay or arbitrary-and-capricious revocation claims.[5]

## PRELIMINARY INJUNCTION

Parcha requests preliminary injunctive relief delaying the legal effect of the USCIS's revocation of the H–1B visa obtained on his behalf and compelling the USCIS to adjudicate the pending H–1B visa petition filed on his behalf. The Court has the authority to grant the relief Parcha seeks under the APA. The Court may hold unlawful and set aside agency action that is "arbitrary" or "capricious," 5 U.S.C. § 706(2)(A), and may compel agency action "unlawfully withheld or unreasonably delayed," *id.* § 706(1). To obtain that extraordinary remedy, however, Parcha must satisfy all of the elements of the preliminary-injunction test. He fails to do so.

---

[5] The Court recognizes that there is also a potential issue regarding the zone-of-interests test. But the Court need not address it here. Unlike jurisdiction, "merits questions [may] be decided before statutory standing questions[.]" *Steel Co.*, 523 U.S. at 97 n.2, 118 S.Ct. 1003. Thus, the Court exercises due restraint and proceeds directly to the merits of the preliminary injunction.

## I.      Legal Standards

The preliminary-injunction standard is a familiar one. A movant must show a substantial likelihood of success on the merits of its claims, a substantial threat of irreparable harm, a balance of hardships weighing in its favor, and a lack of public disservice should the injunction be granted. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012). However, when the government is the nonmovant, the balance of hardships and lack of public disservice factors merge. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (per curiam).

The standard is not easily met. The Fifth Circuit has "cautioned repeatedly" that a preliminary injunction is an "extraordinary remedy." *Tex. Med.*, 667 F.3d at 574. Indeed, the relief has been treated "as the exception rather than the rule." *Miss. Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). This is especially so when the movant seeks mandatory relief compelling action beyond maintaining the status quo. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Such relief is "particularly disfavored" and should only issue when "the facts and law clearly favor the moving party." *Id.* Therefore, without such a showing as to all four elements, the preliminary relief cannot issue. *See, e.g.*, *Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 772 (5th Cir. 2007).

## II.     Parcha Has Not Shown a Substantial Likelihood of Success on the Merits of his Arbitrary-and-Capricious Revocation Claim.

Parcha asserts that he is substantially likely to succeed on the merits of his arbitrary-and-capricious revocation claim because the USCIS acted unlawfully in several ways. First, Parcha argues that the USCIS failed to issue an NOIR within the deadline set by a statute of limitations. Second, Parcha argues that the USCIS exceeded its authority by revoking his visa based on fraud

committed by the visa petitioner, not himself. Third, Parcha argues that the USCIS wrongfully denied him the ability to review the full administrative record. Lastly, Parcha argues that the revocation lacked sufficient allegations of fact. The Court addresses each argument in turn.

## A. Statute of Limitations

Parcha argues that he is likely to prevail on the merits of his arbitrary-and-capricious revocation claim because the USCIS failed to issue an NOIR regarding his H–1B visa within the five-year deadline set by the statute of limitations in 28 U.S.C. § 2462.[6] The USCIS approved the H–1B visa at issue on September 18, 2012, and issued its NOIR on October 1, 2019, over five years later. Parcha's argument rests on the notion that the five-year statute of limitations set forth in section 2462 governs the time by which the USCIS may instigate a revocation proceeding. It does not.

To begin with, the regulations implementing the USCIS's statutory revocation authority foreclose Parcha's argument. The USCIS has statutory authority to revoke a nonimmigrant visa based on 8 U.S.C. § 1184. *Morris*, 2007 WL 2740438, at *3 ("The statute conferring USCIS with the authority to revoke [the plaintiff–beneficiary's] H1B petition is 8 U.S.C. § 1184[.]") (citing 8 U.S.C. § 1184(a)(1)). The regulations implementing section 1184 make clear that the USCIS may exercise that authority "at any time": "The director [of the USCIS] may revoke a petition at any time, even after the expiration of the petition." 8 C.F.R. § 214.2(h)(11)(i)(B).

Parcha's theory fails also because it has no grounding in any legal authority. Parcha fails to provide any authority—be it statute, regulation, or judicial opinion—that applies section 2462's statute of limitations to the USCIS's issuance of an NOIR regarding an H–1B visa. Nor is the

---

[6] Section 2462 provides in relevant part that, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued[.]" 28 U.S.C. § 2462.

Court aware of any authority that has applied section 2462's statute of limitations to any agency action regarding a nonimmigrant or immigrant visa petition. This absence of any authority supporting the application of section 2462 under similar or analogous circumstances regarding nonimmigrant visa petitions settles the issue, as the United States, here the USCIS, "is not bound by any limitations period unless Congress explicitly directs otherwise." *United States v. Hongyan Li*, 619 F. App'x 298, 301 (5th Cir. 2015) (unpublished) (quoting *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir. 1981)).

Moreover, the authorities that Parcha does provide are inapposite to this determination. The first, *H. P. Lambert Co. v. Sec'y of Treasury*, concerned the revocation of a broker's license issued to a customhouse for failure to exercise responsible supervision and control over the business in accordance with the applicable governing statutes. 354 F.2d 819 (1st Cir. 1965). The second, *Article II Gun Shop, Inc. v. Gonzales*, addresses the revocation of a federal license to sell firearms by the Bureau of Alcohol, Tobacco, and Firearms for failure to comply with the Gun Control Act and its implementing regulations. 441 F.3d 492 (7th Cir. 2006). Neither "explicitly direct" that the statute of limitations in section 2462 apply in this instance, nor do they surmount the "strict construction in favor of the government" required when a party attempts to apply a statute of limitations to government action or the clear language of the implementing regulation. *See Hongyan Li*, 619 F. App'x at 301 (quoting *City of Palm Beach Gardens*, 635 F.2d at 339; *Badaracco v. C.I.R.*, 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984)).

In any case, section 2462 is inapplicable because revocation of a fraudulently acquired visa is not a "penalty" or a "forfeiture." Courts have long held that "[t]he words 'penalty' or 'forfeiture' in this section refer to something imposed in a punitive way for an infraction of a public law." *Meeker v. Lehigh Valley Ry. Co.*, 236 U.S. 412, 423, 35 S.Ct. 328, 59 L.Ed. 644 (1915)

(interpreting the predecessor to section 2462); *accord Hongyan Li*, 619 F. App'x at 302 (collecting

cases). "Remedial actions do not count." *Hongyan Li*, 619 F. App'x at 302. Courts' analysis of

section 2462 in the analogous denaturalization context is instructive. Courts, including the Fifth

Circuit, have consistently held that section 2462 does not apply to denaturalization because it is

remedial rather than punitive. *See, e.g.*, *id.* ("[D]enaturalization is the withdrawal of something to

which the individual was never entitled; denaturalization is a restorative or remedial action, not an

action that seeks to punish the commission of a crime.").[7] Revocation of an H–1B visa acquired

through fraud or willful misrepresentation is similarly remedial—it corrects the fraud enacted upon

the USCIS and returns the status quo. Just as revocation of a grant of full United States citizenship

is remedial, so too is revocation of a grant of a smaller subset of those rights. For all of these

reasons, Parcha's argument is not substantially likely to succeed on the merits.

### B. USCIS Revocation Authority

Parcha acknowledges that the USCIS has the authority to revoke an H–1B visa upon

finding fraud or willful misrepresentation in the material facts of the underlying petition, but argues

that the USCIS only has such authority when the wrongful conduct is perpetrated by the

beneficiary of the petition. Wrongful conduct committed by the petitioner, rather than the

beneficiary, under Parcha's view, cannot be a basis for exercising the USCIS's revocation

authority. Because the USCIS's revocation of Parcha's H–1B visa identified wrongful conduct

committed by the petitioner, Kosuri and Unified Systems, but did not explicitly mention any

committed by the beneficiary, Parcha, he contends that the USCIS exceeded its authority.

---

[7] *See also id.* (stating that even though revocation may "certainly [be] severe, it cannot be called punitive"); *Restrepo v. Attorney Gen. of U.S.*, 617 F.3d 787, 801–02 & n.23 (3d Cir. 2010) (collecting cases); *United States v. Phattey*, No. 3:17-CV-247 JWS, 2018 WL 4365490, at *4 (D. Alaska Sept. 12, 2018), *aff'd*, 943 F.3d 1277 (9th Cir. 2019) ("The purpose of revoking citizenship is quite obviously to take back something that was not deserved in the first place. The purpose is not to punish, but rather to restore the status quo.").

Parcha's arguments cannot be reconciled with the text of the controlling statute, 8 U.S.C. § 1184. Section 1184(a)(1) concerns the USCIS's authority over nonimmigrant admission, and provides in relevant part that, "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General shall prescribe[.]" *Id.* § 1184(a)(1). This language authorizes the USCIS to revoke nonimmigrant visa petitions on the basis of fraud and willful misrepresentation. *See, e.g.*, *Morris*, 2007 WL 2740438, at *3.[8]

Section 1184 further provides that the USCIS has revocation authority when "an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact[.]" 8 U.S.C. § 1184(g)(3). Under the statute's plain language, revocation authority is broadly conditioned on a finding of fraud or willful misrepresentation. Nothing in the statutory text limits the scope of that authority to wrongful conduct committed by any particular party. To the contrary, the text provides for revocation of a visa whenever it "is found to have been issued" on the basis of fraud or willful misrepresentation without regard for which party committed the wrongful acts.

The context and design of section 1184 confirm this reading. In ascertaining the plain meaning of section 1184(g)(3), the court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Frame v. City of Arlington*, 657 F.3d 215, 224 (5th Cir. 2011) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). Section 1184(c)(1) requires the "importing employer" to submit the visa

---

[8] *See also* 8 C.F.R. § 214.2(h)(11)(i)(B) ("The director may revoke a petition [for an H–1B visa] at any time, even after the expiration of the petition."); *id.* § 214.2(h)(11)(iii)(A)(2) ("The director shall send to the petitioner a notice of intent to revoke the petition [for an H–1B visa] in relevant part if he or she finds that . . . [t]he statement of facts contained in the petition or on the application for a temporary labor certification was not true and correct, inaccurate, fraudulent, or misrepresented a material fact[.]").

petition on behalf of the beneficiary. *See* 8 U.S.C. § 1184(c)(1). The statute thereby involves both the beneficiary and the petitioning employer in the completion and submission of the visa petition. In recognition of the petition process involving both the beneficiary and the petitioning employer and the possibility of fraud committed by either party, section 1184(g)(3) encompasses fraud or willful misrepresentation by either or both, not only by the beneficiary. Thus, Parcha's argument is not substantially likely to succeed on the merits.

### C.  Inspection of the Record

Parcha also asserts that he is substantially likely to succeed on the merits of his arbitrary-and-capricious revocation claim because the USCIS did not allow him to inspect the administrative record before responding to the NOIR. As a part of a revocation proceeding, the USCIS will develop a record. Regulations govern the extent to which a visa petitioner may review that record. Parcha contends that, under the regulations, he was entitled to review the full record prior to filing his response to the NOIR. The USCIS disagreed and instead provided him a detailed summary of the factual and legal basis for its intent to revoke his visa. Parcha argues that the NOIR's detailed summary was legally insufficient and deprived him of a "meaningful" opportunity to respond. The text of the governing regulation and the great weight of authority foreclose this argument.

The governing regulation states that, "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs."[9] 8 C.F.R. § 103.2(b)(16). Here, the USCIS invoked the exception set forth in the first paragraph, which provides:

---

[9] The Court assumes *arguendo* that Parcha may invoke this regulation as the beneficiary of the visa petition at issue. Although it is unclear whether Parcha—as a beneficiary—constitutes an "applicant" (and it is undisputed that he was not the "petitioner"), courts that have interpreted this regulation, including the Fifth Circuit, have not addressed this potential issue. Likewise, the Court declines to so here.

If the [USCIS] decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section.

*Id.* § 103.2(b)(16)(i). The government argues that this paragraph operates as an exception to the general rule allowing inspection of the record and permits the USCIS to instead provide a factual summary of the "derogatory information" that the USCIS considers in its determination and that is unknown the party, so long as the summary puts the party on notice of the derogatory information sufficient to allow an opportunity to rebut it.

Challenging this understanding of the regulatory text, Parcha makes the conclusory assertion that subsections 103.2(b)(16)(i) and (ii) constitute "separate, mandatory notice requirements" that supplement the mandatory inspection requirement, rather than exceptions that replace it. That is half correct. The subsections of 8 C.F.R. § 103.2(b)(16) do provide separate notice requirements. But the plain text makes clear that those subsections are *exceptions*, not additions, to the general rule of mandatory inspection: "An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, *except as provided in the following paragraphs.*" *Id.* § 103.2(b)(16) (emphasis added). As the Fifth Circuit recently explained:

The plain language of § 103.2(b)(16)(i) requires that USCIS "advise[ ]" the petitioners whose claims are about to be denied of the "derogatory information" that forms the basis for the denial. As many of our sister circuits have recognized, it does not require USCIS to provide documentary evidence of the information, but only sufficient information to allow the petitioners to rebut the allegations.

*Mangwiro v. Johnson*, 554 F. App'x 255, 261–62 (5th Cir. 2014) (unpublished). The great weight of authority agrees with the interpretation articulated by the Fifth Circuit.[10] The cases Parcha cites in rebuttal are unavailing. To begin with, the Seventh Circuit's ruling in *Fliger v. Nielsen* affirmatively rejected Parcha's position in recognizing that "a summary can suffice" and merely "urged" the USCIS to provide the actual evidence as a best practice in future cases. 743 F. App'x 684, 689–90 (7th Cir. 2018). In *Ghafoori v. Napolitano*, the court, in dicta, recognized subsection 103.2(b)(16)(i) as the "first of those exceptions" to the mandatory disclosure requirement before holding that the subsection at issue, 103.2(b)(16)(ii), required production of evidence. 713 Fed. Supp. 2d 871, 879 (N.D. Cal. 2010); *see also Mattson v. Kelly*, No. 315-CV-182, 2017 WL 4102463, at *8–9 (D. Nev. Sept. 14, 2017) (discussing *Ghafoori*). Lastly, in *Boateng v. Holder*, the court proposed that subsection 103.2(b)(16)(i) requires disclosure of derogatory information as a supplement to the mandatory disclosure requirement, allowing a party to review actual evidence upon request. No. CV 12-10057-FDS, 2012 WL 12893987, at *4 (D. Mass. Aug. 16, 2012). No court has adopted that understanding. A fair reading of the plain text, supported by the vast majority of courts interpreting it, shuts the door on Parcha's argument.[11] Because the USCIS

---

[10] *See Zizi v. Field Office Dir.*, 753 F. App'x 116, 117 (3d Cir. 2019) (unpublished) (holding that a summary may satisfy subsection 103.2(b)(16)(i)); *Fliger v. Nielsen*, 743 F. App'x 684, 689 (7th Cir. 2018) (same); *Diaz v. USCIS*, 499 F. App'x 853, 855–56 (11th Cir. 2012) (same); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010) (same); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (same); *Sardo v. Dep't of Homeland Sec.*, 284 F. App'x 262, 266 (6th Cir. 2008) (same); *Wells v. Cuccinelli*, No. 4:19-CV-1099-MGL, 2019 WL 2578630, at *6 (D.S.C. June 24, 2019) (same); *Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 678–79 (E.D. Va. 2019) (same); *Naiker v. USCIS*, 352 F. Supp. 3d 1067, 1076 (W.D. Wash. 2018) (same); *Mattson v. Kelly*, No. 315-CV-182, 2017 WL 4102463, at *8–9 (D. Nev. Sept. 14, 2017) (same); *Mazinda v. USDHS*, No. 115-CV-752, 2016 WL 6156224, at *11–12 (S.D. Ind. Sept. 29, 2016), *report and recommendation adopted*, No. 115-CV-752, 2016 WL 6156318 (S.D. Ind. Oct. 20, 2016) (same); *Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1353 (M.D. Fla. 2016), *aff'd sub nom.*, *Brinklys v. Sec'y, Dep't Homeland Sec.*, 702 F. App'x 856 (11th Cir. 2017) (per curiam) (same); 8 C.F.R. § 214.2(h)(11)(iii)(B) ("The notice of intent to revoke shall contain *a detailed statement of the grounds for the revocation* and the time period allowed for the petitioner's rebuttal.") (emphasis added); *see also Sehgal v. Lynch*, 813 F.3d 1025, 1031–32 (7th Cir. 2016) (same as to section 103.2(b)(16)(ii)); *Ghaly v. INS*, 48 F.3d 1426, 1434–35 (7th Cir. 1995) (same).

[11] Parcha's argument regarding statutory history does not upset this determination. At bottom, Parcha's argument only shows that, in the midst of changes to other USCIS disclosure mechanisms, the mandatory inspection requirement of section 103.2(b)(16) was unchanged. This argument does nothing to rebut how that section and its exceptions should be interpreted, much less counsel in favor of Parcha's proposed interpretation. Further, Parcha's

revoked Parcha's petition and did so based on fraud allegedly unknown to Parcha, the exception

in subsection 103.2(b)(16)(i) applies here.

It is well-settled that the exception only requires the USCIS to summarize the derogatory

information sufficient to provide notice of the basis for its intent to revoke and allow rebuttal. The

NOIR did so here. It began by stating that the USCIS's intent to revoke was based on willful

misrepresentation of material facts in the H–1B visa petition at issue. It explained that the intent

to revoke arose from Kosuri's guilty plea to visa fraud and conspiracy to commit visa fraud. It then

quoted the language of the plea agreement, providing in relevant part that, "[t]he defendant will

plead guilty because the defendant is in fact guilty of the charged offenses . . . [and] admits the

facts set forth in the statement of facts[.]" (Dkt. #1-2). The NOIR explained the underlying facts

admitted by Kosuri through lengthy quotation of his statement of facts and sworn affidavit. Despite

Parcha's assertion to the contrary, both documents, as quoted in the NOIR, state that *all* of the H–

1B visa petitions filed by Kosuri and his companies during the relevant time period were tainted

by misrepresentation of material facts. The statement of facts, as quoted in the NOIR, provides in

relevant part:

> In furtherance of their conspiracy, [Kosuri] and other co-conspirators caused to be
> filed fraudulent and fictitious H–1B visa petitions and LCA's on behalf of the
> Enterprise businesses [including Unified Systems]. . . . Between 2001 and 2016,
> [Kosuri] and the other co-conspirators filed 924 "within cap" petitions for H–1B
> visas on behalf of the Enterprise businesses [including Unified Systems] with
> USCIS, *all of which* contained materially false information.

 (Dkt. #5-4 at 3) (emphasis added). The sworn affidavit, as quoted in the NOIR, echoes the

statement of facts, providing in relevant part:

---

invocation of the "Adjudicator's Field Manual" is irrelevant to this determination because it does not carry the force
of law. *See Diaz v. USCIS*, 499 F. App'x 853, 855 (11th Cir. 2012) (per curiam) ("[A] field manual or other internal
administrative guidance that has not been promulgated in accordance with APA notice-and-comment rule making
procedures does not have the force and effect of law.") (citing *Bradley v. Sebelius*, 621 F.3d 1330, 1338 (11th Cir.
2010); *United States v. Harvey*, 659 F.2d 62, 64 (5th Cir. Unit B Oct. 1981)).

As the former owner of EcomNets, Inc., I [Kosuri] along with other co-conspirators filed fraudulent and fictitious H–1B CAP petitions with USCIS . . . on behalf of shell companies created for this purpose. The shell companies involved in filing fraudulent H–1B CAP petitions included . . . Unified Systems, Inc. . . . The H–1B CAP petitions, LCAs, and supporting documentation further indicated there was employment available and the beneficiaries of those petitions would work at the following physical addresses: 1 EcomNets Way, Danville, VA . . . In fact, there was no work available at these addresses, and *all of the H–1B CAP petitions* filed by the above referenced organizations between 2010 and 2016 were fraudulent. The beneficiaries never actually worked at any of these addresses.

*Id.* (emphasis added). The NOIR then specifically connected the facts provided above to Parcha, noting that his H–1B visa petition was filed by Unified Systems between 2010 and 2016 and listed 1 EcomNets Way, Danville, Virginia, as his place of supposed work. It ended with the specific regulations that Parcha allegedly violated and the method of responding with rebutting evidence, which Parcha did. Therefore, the NOIR discharged its legal obligation to provide Parcha sufficient notice of the derogatory information and opportunity to rebut it.

### D. Facts Sufficient to Revoke Petition

Similarly, Parcha asserts that the revocation of his H–1B visa was arbitrary and capricious because it failed to provide a sufficient factual basis. Generalized allegations of fraud, without specific reference to any instances in a revoked petition, in Parcha's view, are legally insufficient. He contends that the USCIS's revocation of his H–1B visa included insufficiently generalized allegations of fraud arising from Kosuri and Unified Systems's behavior, without specific instances of fraud in the petition itself. Parcha's argument is unpersuasive.

The APA requires a court to hold unlawful and set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). That "highly deferential" inquiry requires a court to determine whether the agency "examined the pertinent evidence, considered the relevant factors, and articulated a reasonable explanation for how it reached its decision." *Associated Builders & Contractors of Tex., Inc. v. NLRB*, 826 F.3d 215, 219 (5th Cir. 2016) (internal quotation marks

omitted). Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (internal quotation marks omitted). A court presumes the validity of the agency action and may not substitute its judgment or preferences for those of the agency. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009); *Associated Builders*, 826 F.3d at 219–20.

The USCIS articulated a reasonable explanation for its revocation of Parcha's H–1B visa based on pertinent evidence and relevant factors. The revocation, as it comprehensively set forth, was based on the explanation that Kosuri and his shell companies, including Unified Systems, committed fraud in all of the H–1B petitions they filed during the time period of Parcha's employment, thereby including the petition filed on his behalf. Like the NOIR, the revocation included the allegation of misrepresentation of material facts in Parcha's H–1B visa petition, the factual background regarding the visa fraud committed by Kosuri and Unified Systems, the extensive quotation from Kosuri's statement of facts and sworn affidavit, and the legal basis for the revocation. The revocation also included an acknowledgment of Parcha's response to the NOIR and enumerated the documents he provided. It then provided comprehensive analysis explaining the basis of its revocation determination and rejecting Parcha's arguments.

The USCIS response to Parcha's arguments began by correctly asserting that the agency is only obligated to provide sufficient notice of derogatory information in its NOIR, contrary to Parcha's assertion that he is entitled to inspect the full administrative record in this case. The response then reiterated the explicit factual detail set forth in the NOIR supporting its adverse determination, including that Kosuri pleaded guilty to visa fraud and repeatedly testified under oath that all of Unified Systems's H–1B visa petitions filed during the relevant time period

misrepresented material information, Parcha's among them. The response then rejected Parcha's argument that Kosuri's statements were an unreliable basis for revocation, stating that the sworn statements had sufficient credibility as evidenced by administrative rulings in support. Indeed, the statement of facts supports this determination by stipulating that the facts therein are "true and accurate, and that if the matter proceeded to trial, the United States would have proven the [facts] beyond a reasonable doubt." (Dkt. #5). Finally, the revocation pointed out that Parcha's arguments and evidence asserting that he did not commit fraud were not responsive to the issue of whether the H–1B visa petition contained fraud. Echoing the discussion herein,[12] the USCIS correctly stated under section 1184 that evidence showing that Parcha may not have committed fraud does not resolve the issue of whether any fraud was committed—by any party—within the application, which alone may serve as the basis for revocation.

The USCIS's revocation determination was neither arbitrary nor capricious. It articulated a reasonable explanation of its determination based on the pertinent evidence and relevant factors. *See Associated Builders*, 826 F.3d at 219. In support, it relied upon sworn statements that it determined were sufficiently credible, and which courts have deemed acceptable. *See, e.g.*, *Redeemed Christian Church of God v. USCIS*, 331 F. Supp. 3d 684, 694–99 (S.D. Tex. 2018) (holding that a USCIS denial of a petition for special immigrant religious worker visa, which was based in substantial part on statements provided by the parties and relevant third-parties, was neither arbitrary nor capricious). The USCIS's comprehensive explanation cannot be considered "so implausible" that the Court will upset the presumption of its validity. *See Wilson*, 991 F.2d at 1215. Thus, Parcha's argument is not substantially likely to succeed on the merits.

---

[12] *See supra* Part II(B).

*     *     *

In sum, none of Parcha's arguments supporting his revocation claim withstands scrutiny. The USCIS's issuance of an NOIR regarding an H–1B visa obtained by fraud or willful misrepresentation is not bound by the five-year statute of limitations set forth in section 2462. The USCIS's authority to revoke an H–1B visa extends to visas involving fraud or willful misrepresentation committed by the petitioner or the beneficiary. The USCIS is not obligated to provide a full inspection of the administrative record when it makes an adverse determination based on derogatory information unknown to the applicant. And the USCIS provided sufficient facts to justify its revocation of Parcha's H–1B visa. For these reasons, Parcha has not shown a substantial likelihood of success on the merits of his arbitrary-and-capricious revocation claim.

**III.    Parcha Has Not Shown a Substantial Likelihood of Success on the Merits on his Unreasonable-Delay Claim.**

Parcha argues that his unreasonable-delay claim is substantially likely to succeed on the merits because the USCIS has not adjudicated the pending H–1B visa petition at issue for over a year. That alone, he contends, is legally sufficient to find that the USCIS unreasonably delayed its adjudication because it exceeds the congressional and agency indicia of what should constitute a reasonable time to adjudicate an H–1B visa petition.

The APA provides the authority for a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also id.* § 555(b); *United States v. Popovich*, 820 F.2d 134, 137 (5th Cir. 1987). A court may compel such action upon a showing of unreasonable delay and prejudice arising from that delay. *King v. Nat'l Transp. Safety Bd.*, 766 F.2d 200, 202 (5th Cir. 1985) (quoting *Chromcraft Corp. v. EEOC*, 465 F.2d 745, 747 (5th Cir. 1972)). The determination of unreasonable delay in agency action is guided by a six-part test:

(1)   the time agencies take to make decisions must be governed by a rule of reason;

(2)  where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)  delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)  the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)  the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)  the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted); *see Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020) (citing the six-factor test for an unreasonable delay claim under the APA).

The delay must be considered in context, and here the factual context favors the USCIS. To be sure, the USCIS has not adjudicated the pending H–1B visa petition at issue for over a year. And Congress has provided its "sense" that such adjudication should take no more than 30 days under ordinary circumstances. 8 U.S.C. § 1571(b). But this adjudication is subject to unusual circumstances created by Parcha's own litigation conduct. Parcha, along with several other plaintiffs in parallel federal litigation arising from the same facts, entered into an agreed injunction with the USCIS in which the agency agreed to:

> forgo taking any adverse final agency action based on the I-129 revocations at issue on any approved, pending, or future I-129, Petitions for Nonimmigrant Workers . . . on behalf of or by any Plaintiff or Plaintiff's derivative for the duration of this action and any appeal thereof to the United States Court of Appeals for the Fourth Circuit.

(Dkt. #5-7). In effect, Parcha's own litigation conduct has deprived the USCIS of the full scope of adjudicative options. Now that the injunction prevents the USCIS from adjudicating Parcha's pending H–1B visa petition based on the underlying determination of fraud in his prior petition, Parcha moves this Court to compel the USCIS to adjudicate based on the options that remain: deny

the petition on independent grounds or approve it. Parcha candidly admits to this litigation strategy, stating in his Complaint that while he "is protected by an injunction entered in the *Sakthivel* case, nothing in the stay prevents the Agency from *approving* [his] pending extension application without reference to the cap H1B visa revocation." (Dkt. #1 at 13) (emphasis added).

Parcha cannot simultaneously agree to an injunction binding the USCIS's hands and then blame the agency for not signing his approval. He attempts to dispel concerns about his coercive strategy by assuring that "[i]f the Agency approved the extension application, but then prevailed in litigation, nothing would prevent the Agency from revoking the approved extension." *Id.* But that is no basis for the Court to compel the USCIS to approve a petition that it may not otherwise, particularly when the USCIS is legally incapable of denying the petition based on its previous determination of willful misrepresentation and continues to defend that determination in active litigation. Under these circumstances, the Court cannot accurately determine that the amount of time elapsed constitutes unreasonable delay. Because the USCIS may very well have moved expeditiously on Parcha's pending H–1B visa petition absent the injunction agreed to by Parcha, he has failed to show that the amount of time elapsed constitutes unreasonable delay under the circumstances.

*     *     *

A preliminary injunction is an "extraordinary remedy" that will issue only upon a movant's showing of success on all four elements. *Tex. Med.*, 667 F.3d at 574. That demanding task is intensified by the Plaintiffs' request for a mandatory injunction that would compel the USCIS to adjudicate Parcha's pending H–1B visa petition. *See Martinez*, 544 F.2d at 1243. The Plaintiffs have not made the necessary showing to prove their case the "exception." *Miss. Power & Light*, 760 F.2d at 621. Because the Plaintiffs failed to show that their claims are substantially likely to succeed on the merits, the Court need not examine the additional elements required to obtain

preliminary injunctive relief. *See, e.g.*, *Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 772 (5th Cir. 2007) ("Because we conclude that no constitutional violation has occurred," such that the plaintiffs "have failed to show that they have a 'substantial likelihood' of success on the merits," the court resolved that its "inquiry ends here"). Therefore, the Motion is DENIED.

CONCLUSION

It is therefore **ORDERED** that the Plaintiffs' Emergency Motion for a Temporary Restraining Order or Preliminary Injunction is **DENIED**. (Dkt. #4).

**So ORDERED and SIGNED this 7th day of February, 2020.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE